**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| vs. | ) ) Civil No. 1:20-cv-01529-CMH-JFA ) |
| **CHRISTOPHER CLARK et al.,** | ) ) ) |
| **Defendants.** | ) ) ) |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION *IN LIMINE* AND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE***

COMES NOW, Defendant Christopher Clark ("Mr. Clark"), who hereby submits his supplemental memorandum in support of his Motion *in Limine* (ECF No. 120), his Memorandum in Support of this Motion *in Limine* (ECF No. 121) and his Memorandum of Law in Opposition to Plaintiff's Motions *in Limine* (ECF No. 126).

**BACKGROUND**

On November 19, 2021, the parties came before the Court on Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, Plaintiff's and Defendant's Motions *in Limine*, Defendant's *Daubert* Motion, and Plaintiff's Motion to Exclude Michael Petron pursuant to Fed. R. Evid. 702. After considering the parties' briefs on the issues and hearing argument, the Court entered an Order denying Plaintiff's Summary Judgment Motion and denying the

parties' Motions *in Limine* and Motions to Exclude without prejudice to be raised at the time of trial (ECF No. 130).

## ARGUMENT

While defense counsel remains prepared to argue Mr. Clark's previously filed Motion's *in Limine* at Trial as contemplated by the Court's order, a supplemental memorandum in support is hereby filed regarding exclusion of any evidence related to Mr. Clark's and former co-defendant William Wright's ("Mr. Wright") (collectively, "Defendants") settlement negotiations and/or settlement. (Defendant's Motion *in Limine* ¶ 6 and Defendant's Memorandum in Support of his Motion *in Limine* ¶). Citing to Federal Rule of Evidence 408, Mr. Clark argues any evidence related to his settlement negotiations and Mr. Wright's settlement of the case should be excluded from admission at trial. Herein, Mr. Clark offers further support for exclusion of any evidence related to Defendants' settlement negotiations and or settlement. Furthermore, Mr. Clark hereby offers additional support disfavoring SEC's ability to question former co-defendant with leading questions under Federal Rule of Evidence 611.

In *Securities and Exchange Commission v. Larry A. Goldstone et al.,* the Securities and Exchange Commission ("SEC") sought to admit evidence at trial of the fact that a co-defendant, Jane E. Starrett ("Starrett"), was investigated by SEC and named as a co-defendant. 317 F.R.D. 147, 158 (D.N.M. 2016). Additionally, SEC sought to introduce evidence of Starrett's settlement with SEC. *Id.* Furthermore, in *Goldstone*, SEC argued to be able to ask Starrett leading questions as an *adverse witness* at trial under Fed. R. Evid. 611. As support for their argument for exclusion of evidence of Starrett's settlement at trial, the defendant's provided two primary arguments: (1) Fed. R. Evid. 408 which bars evidence of settlement negotiations; and (2)

Fed. R. Evid. 401 and 403, which excludes relevant evidence when its probative value is substantially outweighed by a danger of unfair prejudice.  Acknowledging the admissibility of evidence of settlement negotiations for limited purposes including "proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution," defendant's argued the court should exercise its "broad discretion" in accordance with the "strong public policy favoring settlement." 317 F.R.D. at 158.  They further argue, introduction of Starrett's settlement "will serve no purpose beyond improperly implying to the jury that Ms. Starrett has admitted fault on some level, that at a minimum the SEC's claims against the Defendants are legitimate, and that Defendants must somehow be at fault by association." *Id.* Citing to *Leon v. Fedex Ground Package System, Inc.* where the Court excluded evidence of settlement "because it could cause the jury to 'unfairly decrease [the defendant's] share of the liability' and to 'assume that [the settlement] is an admission of guilt." 163 F.Supp39 at 1070, 2016 WL 814639, at *14).

As for the *Goldstone* defendants' rules 401 and 403 arguments against admission of Starrett's settlement, counsel cited, *SEC v. Todd* in which the Court precluded SEC from referencing an employer's settlement during a civil enforcement proceeding against that employer's employees.  317 F.R.D. at 159 (citing *S.E.C. v. Todd*, No. 03CV2230BEN(WMC), 2006 WL 5201386 (S.D. Cal. Oct. 17, 2006)).  In *Todd*, "[the employer's] settlement with the SEC is irrelevant.  The Court also finds that under Fed. R.Evid. 403, any mention of Weitzen's former status as a defendant is likely to lead to prejudice that *far outweighs* any negligible probative value it has toward showing bias toward the SEC." *Todd,* at *1.  Through a thorough analysis, the *Goldstone* Court permitted limited references to Starrett's settlement stating, "[t]he

3

Court will allow the SEC to state that it investigated and sued Starrett based on her work at Thornburg Mortgage, but the SEC may not introduce any other Settlement Evidence."

In its decision, the Court summarized, "SEC argues that it needs the settlement to 'avoid confusion, tell a complete story, and show Ms. Starrett's bias in favor of the remaining Defendants.'" 317 F.R.D. at 165.  Conversely, "[t]he Defendants counter that the Settlement Evidence has "no purpose beyond improperly implying to the jury that Ms. Starrett has admitted fault on some level, that at a minimum the SEC's claims against the Defendants are legitimate, and that Defendants must somehow be at fault by association." *Id.*  In ruling against SEC's arguments, "[t]he Court conclude[d] that the Settlement Evidence's unfair prejudice to the Defendants is greater than the potential danger of jury confusion." *Id.*  Citing to *Leon*, where "[t]he Court excluded the settlement evidence on the grounds that: (i) '[i]nforming jurors that [the other defendants] settled could cause them to unfairly decrease FedEx Ground's share of the liability'; (ii) the jury could 'assume that this is an admission of guilt'; and (iii) jury instruction provided an alternative means of mitigating any jury confusion." *Id.* at 165-66 (quoting *Leon*, at *14).  The *Goldstone* Court reasoned, "Starrett may have settled with SEC for a host of other reason, including the emotional toll of litigation, the cost of trial, and the benefit of certainty.  In any case, the jury should decide whether Goldstone and/or Simmons violated federal securities laws based on the evidence presented at trial-not on speculation that Starrett, a close ally of Goldstone and Simmons, is admitting some wrongdoing by settling before trial." *Id.*, at 165.

Ultimately, the *Goldstone* Court permitted the defendants to submit a proposed jury instruction that would serve to prohibit the jury from drawing *unwarranted inferences* which "may allow [the Court] to prevent jury confusion without introducing an unnecessary risk of prejudice." *Id.*, at 167.

4

These referenced cases are directly on point with SEC's seeking to admit evidence of their settlement with Mr. Wright. As previously argued in Mr. Clark's Memorandum in Support of his Motions *in Limine* [ECF No. 121], and again in his Objections to SEC's Trial Exhibits [ECF No. 150], evidence of Mr. Wright's settlement with the SEC will certainly lead to an inference of wrongdoing by Mr. Wright which will automatically be imparted to Mr. Clark by the very nature of the conduct alleged. If the jury improperly concludes Mr. Wright is deemed to have admitted wrongdoing, the same conclusion will automatically be drawn as to Mr. Clark. As stated in Mr. Clark's objections to SEC's trial exhibits with reference to SEC proposed trial Exhibit 282, "Mr. Wright has denied SEC's allegations countless times since 2017…and will do so again at trial." Like the Court opined in *Goldstone*, the jury should decide Mr. Clark's liability based on evidence presented at trial-not on speculation that Mr. Wright admitted wrongdoing by settling before trial. *See Id.*, at 165. Mr. Wright has testified that he was asked to resign in November of 2019 when he voluntarily informed his employer about the likelihood of SEC's civil enforcement action. (Wright Deposition Transcript 217:15-219:4 excerpted and attached as **EXHIBIT 1**). Despite his constant denials of any wrongdoing, Mr. Wright settled for personal reasons that made sense for him and his family. That said, it will likely be difficult for a jury to comprehend Mr. Wright's decision due to the unusual nature of the circumstances which very few people will ever experience. SEC has every opportunity to convince a jury of Mr. Clark's liability with the purely circumstantial case they have brought.

As previously raised, SEC's motivations in seeking admission of evidence related to Mr. Wright's settlement are made clear by their press release entitled "SEC Obtains Judgment Against Former Corporate Controller for Tipping Brother-In-Law Ahead of Merger Announcement" which SEC recently released on November 15, 2021, less than one month prior

to Mr. Clark's trial.  **EXHIBIT 2**.  SEC's press release states, "As alleged, Wright tipped non-public information concerning the acquisition to his brother-in-law, Christopher J. Clark of Arlington, VA.  Based on the information tipped by Wright, Clark allegedly purchased highly speculative, out-of-the-money call options."  **Exhibit 2**.  The trading alleged in SEC's complaint occurred five years before Mr. Clark's trial, yet the SEC tellingly decided it was necessary to issue its self-serving press release to give itself a pat on the back before any determination of liability could be made for either defendant.  Both Mr. Clark and Mr. Wright have consistently denied the alleged conduct and no finder of fact has yet made any determination of liability.  Regardless, SEC elected to use Mr. Wright's settlement to get their version of events on the public record less than a month before Mr. Clark's trial was set to begin.  SEC's conduct in drafting and releasing a press release on the eve of Mr. Clark's trial telegraphs how SEC plans to use Mr. Wright's settlement against Mr. Clark.  As such, it is imperative the Court impose limitations on SEC's tactics to ensure Mr. Clark is not prejudiced and receives a fair trial.

     Mr. Wright received a subpoena from SEC to appear as a witness at Mr. Clark's trial and it is, therefore, expected he will be called to testify.  In testifying, SEC should be precluded from treating Mr. Wright as an adverse witness by asking him leading questions.  Fed. R. Evid. 611(c) states "Leading questions should not be used on direct examination except as necessary to develop the witness's testimony.  Ordinarily, the court should allow leading questions: (1) on cross examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."  Although the phrase "adverse party" is not precisely defined, there are a few relationships fall within its meaning including: (i) employer/employee; (ii) romantic partners; and (iii) law enforcement investigators.  317 F.R.D. at 164 (citing *Chonich v. Wayne Cty. Cmty. Coll.,* 874 F.2d 359, 368 (6th Cir. 1989); *United States v. Hicks*, 748 F.2d 854,

859 (4th Cir. 1984); *United States v. Tsui*, 646 F.2d 365, 368 (9th Cir. 1981)). Beyond these limited identified categories, "[t]he trial court has 'virtually unlimited discretion' in making determinations under Rule 611(c)." 317 F.R.D. at 163 (quoting 4-611 Weinstein's Federal Evidence § 611.06 (2015)). In deciding whether a particular witness is "adverse," courts may wait until a witness actually demonstrates hostility before making such a determination. *Goldstone*, at 164 (citing Victor J. Gold, 28 Fed. Prac. & Proc. Evid. § 6168 (2nd ed.)). "[S]ince leading questions can also be justified if the specific witness in question is demonstrably 'hostile,' there is no need to make possibly unwarranted generalizations about he types of witnesses who should be presumed immune to suggestion." *United States v. Brown*, 603 F.2d 1022, 1025-26 (1st Cir. 1979).

    Like Starrett in *Goldstone*, Mr. Wright: (1) has consistently denied under oath the allegations against him; (2) agreed to a settlement with the SEC that included a *no admit no deny* provision; and (3) has a "relationship with SEC such that his interests could 'be either *identical* to those of the adverse party or, at minimum, both *closely aligned* with those of the adverse party and of comparable significance." 317 F.R.D. at 167 (quoting *Bixby v. KBR, Inc.*, 2012 WL 4754942, at *3.) Although Starrett was aligned with the defendants, the *Goldstone* Court refrained from making a premature determination as to whether SEC would treat her as an adverse witness until trial to see how her testimony unfolded. *Id.* at 169. The Court explained, "Courts generally wait until trial to make this determination, because '[t]he requisite degree of hostility, bias or reluctance of a witness must usually be demonstrated to the satisfaction of the court.'" *Id*. (quoting Weinstein, *supra*, at § 611.06). Stating further, "the Court cannot, at this stage, confidently predict whether Starrett's testimony will be wholly favorable to the Defendants or whether she will be a difficult witness for the SEC." *Id.* "While the chance are

7

great that Starrett remains fully aligned with the remaining Defendants, and that leading questions are appropriate, the Court declines to 'make possibly unwarranted generalizations about the types of witnesses who should be presumed immune to suggestion.'" *Id.*

## CONCLUSION

Because of the similarity of the facts and circumstances apparent in *SEC v. Goldstone*, the Court should make similar determinations as they relate to admission of evidence of Mr. Wright's settlement negotiations and subsequent settlement with SEC. While the Court may permit the SEC to introduce limited evidence of SEC's investigation into Mr. Wright and SEC may be permitted to ask leading questions on that limited topic, the SEC should be precluded from introducing evidence related to Mr. Wright's settlement negotiations and subsequent settlement. Further, the Court should not permit SEC to ask Mr. Wright leading questions on other topics besides the SEC investigation until *obtaining his temperature* after a few questions before deciding whether he is still firmly aligned with Mr. Clark. *Id.*

Date: December 7, 2021

Respectfully Submitted,

By: /s/ Mark D. Cummings
Mark D. Cummings (VSB 18271)
Sher, Cummings and Ellis
3800 Fairfax Drive, Suite 7
Arlington, VA 22203
Phone: (703) 525-1200
mcummings@sherandcummings.com
*Counsel for Defendant Christopher Clark*

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2021, I filed the foregoing document via CM/ECF and thereby served all counsel of record in this matter.

By: /s/ Mark D. Cummings
Mark D. Cummings (VSB 18271)
Sher, Cummings and Ellis
3800 Fairfax Drive, Suite 7
Arlington, VA 22203
Phone: (703) 525-1200
mcummings@sherandcummings.com
*Counsel for Defendant Christopher Clark*
